**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Margaret CHRIST, individually and as guardian ad litem for Kelly Christ, Jeffrey Christ, and Anthony Christ, Defendants–Appellees.**

**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Melba CHRIST, Defendant–Appellant,**

and

**Margaret Christ, individually and as guardian ad litem for Kelly Christ, Jeffrey Christ, and Anthony Christ, Defendants–Appellees.**

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1992.

Decided Nov. 10, 1992.

As Amended Nov. 17, 1992.

Brian W. McGrath, James O. Huber, Foley & Lardner, Milwaukee, Wis., William J. Toppeta, Cornelia. Dude, Paul G. Huck, Metropolitan Life Ins. Co., Law Dept., David J. Larkin, Jr. (argued), New York City, for plaintiff-appellant Metropolitan Life Ins. Co.

Gerald G. Fuchs (argued), Evansville, Ind., for defendant-appellant Melba Christ.

Allen Silverstein (argued), Milwaukee, Wis., for defendants-appellees Margaret Christ and Anthony Christ.

Stuart M. Gerson, Office of U.S. Atty. Gen., Robert S. Greenspan, Michael S. Raab, Dept. of Justice, Civ. Div., Appellate Section, Washington, D.C., for amicus curiae U.S.

Before RIPPLE and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

Lawrence Christ, a federal employee, was married to Margaret Christ, with whom he had three children. In 1978, Lawrence and Margaret divorced. The divorce decree ordered Lawrence, among other things, to maintain his children as beneficiaries on his life insurance policies until September 13, 1993, when the youngest would turn eighteen. Among those policies was one issued by Metropolitan Life Insurance Company (MetLife) pursuant to the Federal Employees Group Life Insurance Act, 5 U.S.C. §§ 8701–16 (FEGLIA). In 1988, Lawrence married Melba Christ. In January 1990, Lawrence died, still insured under the FEGLIA policy. Despite the divorce decree, Lawrence never had designated any beneficiary to receive the proceeds of his FEGLIA policy.

This case involves the proper distribution of the proceeds of Lawrence's FEGLIA policy. Both Margaret (as guardian for her minor children) and Melba filed claims for the policy proceeds with MetLife. MetLife, in turn, filed an interpleader action in federal district court under 28 U.S.C. § 1335 to determine the proper beneficiary. Margaret based her claim on the children's rights under the divorce decree, arguing that Lawrence's failure to designate the children as beneficiaries under the policy amounted to a breach of trust that unjustly enriched Melba and therefore justified the imposition of a constructive trust on the proceeds for the children's benefit. Melba argued that FEGLIA preempted the state divorce decree and state law equitable principles and that she was entitled to the proceeds as the beneficiary under FEGLIA's order of precedence. The district court, following *Rollins v. Metropolitan Life Insurance Co.*, 863 F.2d 1346 (7th Cir.1988), concluded that the divorce decree formed a constructive trust and awarded the insurance proceeds to Margaret's children. We reverse the district court.

I.

Congress enacted FEGLIA in 1954 "to provide low-cost group life insurance to Federal employees." H.R.Rep. No. 2579, 83d Cong., 2d Sess. (1954), *reprinted in* 1954 U.S.C.C.A.N. 3052. Under FEGLIA, insurance benefits are provided under a master policy issued by MetLife to the United States Office of Personnel Management (OPM). See 5 U.S.C. § 8709 (authorizing OPM to purchase group policy from private life insurance companies). OPM administers FEGLIA and has the authority to "prescribe regulations necessary to carry out" FEGLIA's purposes. 5 U.S.C. § 8716. Payroll deductions from participating employees pay for a portion of the cost of FEGLIA insurance; contributions from the government pay for the rest. 5 U.S.C. §§ 8707–08.

FEGLIA sets out precisely to whom insurance benefits are to be paid when a participating employee dies. See 5 U.S.C. § 8705. That statutory "order of precedence" provides:

(a) The amount of group life insurance and group accidental death insurance in

force on an employee at the date of his death *shall be paid,* on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in [the employing office or, in some cases, the OPM]. *For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.*

Second, if there is no designated beneficiary, to the widow or widower of the employee.

Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.

Fourth, if none of the above, to the parents of the employees or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.

Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.

*Id.* (emphasis added). The master policy issued by MetLife expressly incorporates the statutory order of precedence. The handbook that explains FEGLIA to federal employees advises them that if they wish to have their death benefits paid according to the statutory order of precedence, they need not designate a beneficiary.

A regulation promulgated by the OPM underscores a federal employee's unrestricted right to designate or change his policy's beneficiary: "A change of beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary. *This right cannot be waived or restricted.*" 5 C.F.R. § 870.902(e) (emphasis added). FEGLIA itself also contains a preemption clause that provides that

[t]he provisions of any contract under [FEGLIA] which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1).

In *Rollins,* when this court was faced with the same issue in nearly identical circumstances, we decided that nothing in FEGLIA preempted a state divorce decree directing an insured to name a certain beneficiary or precluded the imposition of a constructive trust on the insurance proceeds to enforce the decree despite FEGLIA's order of precedence and the insured's unhampered right to change beneficiaries. See 863 F.2d at 1349–54. Based on our decision in *Rollins,* the district court felt constrained to hold that Lawrence's failure to designate his children as beneficiaries of his FEGLIA policy amounted to a breach of trust that unjustly enriched Melba and justified the imposition of a constructive trust in favor of the children on the proceeds. Both Melba and MetLife appeal the district court's decision.[1]

This appeal raises one issue: should we overrule *Rollins? Rollins* conflicts with FEGLIA's unambiguous language and its implementing regulations, with basic principles of federal preemption of state law, and with case law from other circuits. See *Dean v. Johnson,* 881 F.2d 948 (10th Cir.), *cert. denied,* 493 U.S. 1011, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989); *O'Neal v.*

---

**1.** MetLife, in its original interpleader complaint, did not plead that it had any interest in the insurance proceeds. Instead, MetLife paid the policy proceeds into the court registry and sought to be discharged from all further liability with respect to Lawrence's FEGLIA policy. In its final order, the district court discharged MetLife from any further liability. MetLife has no further stake in this proceeding, and thus has no standing to pursue this appeal. Cf. *Nationwide Mut. Fire Ins. Co. v. Eason,* 736 F.2d 130, 133–34 (4th Cir.1984). Therefore, we dismiss MetLife's appeal. The dismissal has no practical effect on the outcome of this case, however, because Melba's timely appeal raises the same arguments MetLife sought to raise.

*Gonzalez,* 839 F.2d 1437 (11th Cir.1989). It also conflicts with *Ridgway v. Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), in which the Supreme Court held that a nearly identical insurance program for military servicemen does not allow a divorce decree to direct to whom benefits are to be paid or the imposition of a constructive trust on those benefits. We therefore overrule *Rollins* and reverse the district court's judgment.[2]

The Supremacy Clause, U.S. Const. Art. VI, cl. 2, makes "the Laws of the United States ... the supreme Law of the Land ... anything in the Constitution or Law of any State to the Contrary notwithstanding." From this comes the doctrine that federal law may preempt state law. Preemption occurs in three situations. Congress may define expressly to what extent a federal statute preempts state law. E.g., *Morales v. Trans World Airlines, Inc.,* —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95–98, 103 S.Ct. 2890, 2898–2899, 77 L.Ed.2d 490 (1983). We may also infer preemption when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area. *English v. General Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 2279, 110 L.Ed.2d 65 (1990). Finally, where state law actually conflicts with federal law, state law must give way, even in fields such as domestic relations that traditionally have been governed by state law. *Ridgway,* 454 U.S. at 54–55, 102 S.Ct. at 54–55. Thus, "a state divorce decree ... must give way to clearly conflicting federal enactments." *Id.* at 55, 102 S.Ct. at 54.

Whether or not federal law preempts state law depends "on statutory intent," so preemption analysis begins " 'with the language employed by Congress and the assumption that the ordinary meaning of that language accurately ex-presses the legislative purpose.' " *Morales,* —— U.S. at ——, 112 S.Ct. at 2036 (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 55, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990)). This underscores *Rollins'* major shortcoming. *Rollins* gave little attention to FEGLIA's actual language. It relegated to a footnote, with no analysis, the statutory order of precedence for payment of the death benefit. See 863 F.2d at 1348 n. 3. Nor did *Rollins* refer to FEGLIA's preemption clause. An analysis of FEGLIA's language shows that FEGLIA preempts the constructive trust remedy the district court imposed in this case.

FEGLIA's order of precedence is written in mandatory, inflexible terms. According to § 8705(a), proceeds *"shall* be paid according to the order of precedence." Nothing in § 8705 or anywhere else in FEGLIA creates any exceptions, equitable or otherwise. Besides setting out the order of precedence, § 8705(a) also sets out explicitly how beneficiary designations are to be executed and states that "a designation ... of beneficiary in a ... document not so executed and filed *has no force or effect."* (Emphasis added.) Congress added the "no force or effect" language to FEGLIA in 1966 in response to the Ninth Circuit's decision in *Sears v. Austin,* 292 F.2d 690 (9th Cir.), *cert. denied,* 368 U.S. 929, 82 S.Ct. 365, 7 L.Ed.2d 192 (1961), which held that a beneficiary designation in a will not executed or filed according to FEGLIA's requirements was valid. By amending FEGLIA, Congress sought to make clear that for reasons of administrative convenience and avoidance of delay in payment of proceeds, " 'the order of precedence ... shall prevail over any extraneous document designating a beneficiary.' " *O'Neal v. Gonzalez,* 839 F.2d at 1440 (quoting S.Rep. No. 1064, 89th Cong.2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 2070, 2071).

The language, structure, and legislative history of FEGLIA's order of precedence and beneficiary designation requirements

---

**2.** This opinion has been circulated among all judges of this court in regular active service. A majority did not favor rehearing en banc on the question of overruling *Rollins.*

At our request, the United States Justice Department submitted a brief expressing its position that *Rollins* should be overruled. We thank the Justice Department for its response to our request and its participation in this case.

lead to the conclusion that FEGLIA establishes "an inflexible rule that the beneficiary designated in accordance with the statute would receive the policy proceeds, regardless of other documents or the equities in a particular case." *O'Neal*, 839 F.2d at 1440. A state divorce decree requiring an insured to "maintain" certain people as beneficiaries and the imposition of a constructive trust to enforce that decree inevitably conflict with this mandatory federal scheme. The constructive trust requires that proceeds be paid to someone other than the person to whom FEGLIA's order of precedence says "shall be paid." This, in turn, gives "force and effect" to a beneficiary designation not made according to FEGLIA's requirements and thus allows an "extraneous document"—the divorce decree—to prevail over FEGLIA's order of precedence. If a conflict between the requirements of state and federal law does not exist in this case, we would be hard pressed to say in what case such a conflict might exist.

Besides conflicting with the actual language of FEGLIA's order of precedence, the constructive trust remedy imposed in this case and *Rollins* also conflicts with the general purpose of the order of precedence: to avoid difficulties in administering FEGLIA and the resulting delays in paying proceeds to beneficiaries. As this case and *Rollins* illustrate, "equitable" exceptions to FEGLIA's order of precedence are bound to produce litigation. Without getting into all the complexities that such litigation would engender, it suffices to say that litigation produces the kind of delay and cost that FEGLIA's mandatory order of precedence is meant to avoid.

FEGLIA's preemption clause, 5 U.S.C. § 8709(d), reinforces the conclusion that FEGLIA's order of precedence preempts the constructive trust remedy the district court awarded in this case. Section 8709(d) provides that any provisions in the master FEGLIA policy that "relate to the nature or extent of coverage or benefits (including payments with respect to benefits)" preempt any state law that "relates to group life insurance" to the extent that law is inconsistent with the policy provision.

This clause broadly preempts any state law that is inconsistent with the FEGLIA master policy. The ordinary meaning of the term "relates to" is broad: " 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' " *Morales*, —— U.S. at ——, 112 S.Ct. at 2037 (quoting Black's Law Dictionary 1158 (5th ed. 1979)). Moreover, a state law need not specifically address the subject of the federal law to relate to that subject: " '[A] state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.' " *Id.* at ——, 112 S.Ct. at 2038 (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, ——, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)).

MetLife's master policy expressly incorporates FEGLIA's order of precedence. (App. 113–14) The order of precedence unquestionably "relates to ... payments with respect to benefits" since it determines to whom benefits are to be paid. The divorce decree and the constructive trust imposed to enforce that decree "relate to" group life insurance, even though they do not directly refer to group life insurance, because they also purport to direct to whom the benefits of a FEGLIA policy are to be paid. Because the divorce decree and constructive trust remedy are inconsistent with the order of precedence incorporated in the policy, § 8709(d)(1)—aside from any other principles of preemption—expressly requires that the policy preempts the divorce decree and constructive trust.

Besides conflicting with FEGLIA's order of precedence, the divorce decrees in *Rollins* and this case directly conflict with 5 C.F.R. § 870.902(e). That regulation provides that: "A change of beneficiary may be made at any time.... This right cannot be waived or restricted." The divorce decree in this case, by ordering Lawrence to "maintain" his children as beneficiaries on his FEGLIA policy, purported to restrict Lawrence's right to change his beneficiary, something that § 870.902(e) says explicitly

cannot be done. See *Dean*, 881 F.2d ·at 948–49.

In concluding that FEGLIA preempts the divorce decree and constructive trust remedy in this case, we are not writing on a clean slate. In *Ridgway*, the Supreme· Court considered the preemptive effect of the Serviceman's Group Life Insurance Act (SGLIA), an insurance program nearly identical to FEGLIA in almost all important respects (and which was, in fact, ·modeled after FEGLIA, see *Stribling v. United States*, 419 F.2d 1350, 1353 (8th Cir.1969)), in a factual situation almost identical to the one in this case. Richard Ridgway divorced his wife, April. The divorce decree ordered Richard to "keep in force the life insurance policies on his life now outstanding for the benefit of his and April's children." 454 U.S. at 48, 102 S.Ct. at 51. One of those policies was a SGLIA policy that named April as the beneficiary. *Id.*

. A few months later, Richard married Donna Ridgway. He subsequently changed the SGLIA policy's beneficiary designation, directing that the policy proceeds be paid as specified "by law," a reference to SGLIA's order of precedence. After Richard died, both Donna and April filed claims for the proceeds of the SGLIA policy. April, like Margaret Christ in this case, argued that Donna had been unjustly enriched and that under state law a constructive trust could be imposed on the proceeds for the children's benefit. *Id.* at 49–50, 102 S.Ct. at 51–52.

The Supreme Court rejected April's argument. The Court noted that where federal and state law conflict, the Supremacy Clause requires that state law give way. *Id.* at 55, 102 S.Ct. at 54. Like FEGLIA, SGLIA contains an order of precedence that identifies precisely to whom SGLIA benefits' are to be paid. See *id.* at 52, 102 S.Ct. at 53. Also, like FEGLIA, SGLIA's implementing regulations provide that a change of beneficiary "may be made at any time and without the knowledge and consent of the previous beneficiary" and that "[n]o change or cancellation of beneficiary ... in a last will or testament, or in any other document shall have any force or effect unless such change is received by the appropriate office." See *id.* at 53, 102 S.Ct. at 54. The Court found that in SGLIA and its implementing regulations, Congress had " 'spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other.' " *Id.* at 56, 102 S.Ct. at 55 (quoting *Wissner v. Wissner*, 338 U.S. 655, 658, 70 S.Ct. 398, 399, 94 L.Ed. 424 (1950)). The divorce decree and constructive trust interfered with Richard's right to designate his beneficiary and with the statutory order of precedence; therefore, SGLIA preempted the divorce decree and the imposition of the constructive trust. *Id.* 454 U.S. at 55–57, 102 S.Ct. at 54–56.

*Rollins* purported to distinguish its case from *Ridgway*, and FEGLIA from SGLIA, but we find the purported distinctions to be insignificant. *Rollins* found it significant that SGLIA was designed to further the federal interests in military morale and national defense. 863 F.2d at 1351. *Ridgway* did mention these interests. See 454 U.S. at 55–57, 102 S.Ct. at 54–56. But Congress sought to promote several interests in FEGLIA—federal employee morale, efficiency of administration, and speed in distributing benefits—that it perceived to be important and which could be impaired by allowing the kind of litigation *Rollins* would allow. More importantly, *Ridgway*'s holding was grounded ultimately not on any perceived "interests" that Congress was trying. to pursue, but on the statutory language giving force to those interests. See *id.* (discussing SGLIA and its implementing regulations). Congress does not enact intents or purposes; it enacts texts, and those texts are what constitute law. Cf. *Livingston Rebuild Ctr., Inc. v. Railroad Retirement Bd.*, 970 F.2d 295, 297–98 (7th Cir.1992). A state law divorce decree purporting to order a federal employee to designate a certain beneficiary for the proceeds of his FEGLIA policy directly conflicts with ·FEGLIA as Congress wrote it. Federal judges have no power to ignore that conflict just because we are not impressed by the "purposes" behind the statutory language.

*Rollins* also found it significant that SGLIA, unlike FEGLIA, contained an anti-attachment provision. See 863 F.2d at 1351, 1352. *Ridgway* did cite as a basis for preemption that the divorce decree and constructive trust in that case conflicted with SGLIA's anti-attachment provision. See 454 U.S. at 60–61, 102 S.Ct. at 59–60. But that fact was a separate ground for holding that SGLIA preempted the divorce decree. *Ridgway*'s discussion of the anti-attachment provision appears in a separate section of the opinion after the section in which the Court had already concluded that the conflict with SGLIA's order of precedence and the insured's absolute right to change beneficiaries justified holding that SGLIA preempted the divorce decree. See *id.* at 55–61, 102 S.Ct. at 54–58.

*Rollins* further noted that "the complaint [in *Ridgway*] . . . contained no allegations to support the constructive trust theory." 863 F.2d at 1351. *Rollins* could not have been saying that the allegations in *Ridgway* were not sufficient to support imposition of a constructive trust under state law; the state court had, in fact, ordered a constructive trust. See 454 U.S. at 49–50, 102 S.Ct. at 51–52. Instead, *Rollins* apparently was referring (without saying so) to *Ridgway*'s discussion of *Yiatchos v. Yiatchos,* 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), which had held that the doctrine of federal preemption would not be used to shield fraud. See *Ridgway,* 454 U.S. at 58–60, 102 S.Ct. at 56–58. But *Rollins* failed to mention that the Court in *Ridgway* went on to distinguish *Yiatchos,* in effect limiting *Yiatchos* to situations in which a person had fraudulently divested a victim of *the victim's own* property. See *id.* at 58–60, 59 n. 8, 102 S.Ct. at 57–59, 58 n. 8. The complaint in *Ridgway* did not allege anything more than a breach of contract by Richard. *Id.* at 59, 102 S.Ct. at 56. Significantly, the Court went on to state that unlike in *Yiatchos,* "only Sergeant Ridgway had the power to create and change a beneficiary interest in his SGLIA insurance. *By exercising that power, he hardly can be said to have committed fraud.*" *Id.* at 60, 102 S.Ct. at 59 (emphasis added). The same is true of Donald

Rollins and Lawrence Christ; therefore, *Yiatchos* no more bars federal preemption in *Rollins* or this case than it did in *Ridgway.*

*Rollins* · finally noted that 5 C.F.R. § 870.902(e), the provision establishing a federal employee's unwaivable right to change FEGLIA beneficiaries, did not apply in that case because (as in this case) Mr. Rollins had never named a beneficiary; his wife was claiming a right to benefits as a widow under FEGLIA's statutory order of precedence. That argument is not persuasive for several reasons. First, it overlooks the fact that the divorce decree in *Rollins,* as in this case, directly conflicted with other provisions of FEGLIA (provisions that *Rollins* did not analyze). Second, there is no significant difference between actually naming a beneficiary and depending on the statutory order of precedence. *Ridgway* underscores this point. Richard Ridgway did not name a particular beneficiary; instead, he filed a beneficiary designation specifying that the proceeds be paid "by law," which meant by the statutory order of precedence. When an insured does not file a beneficiary designation, he is doing (in a more convenient way) exactly what Richard Ridgway did. If the unfettered right to name or change a beneficiary was important in *Ridgway,* it should have been important in *Rollins* and it should be important in this case.

Finally, *Rollins*' conclusion that the lack of an actual beneficiary designation made § 870.902(e) irrelevant overlooked the fact that a divorce decree directing a person to maintain a certain person as his FEGLIA beneficiary actually purports to deprive that person from ever changing the designation. Thus, the divorce · decree directly conflicts with § 870.902(e) regardless of whether the insured ever actually names another beneficiary.

*Rollins* involved an unfortunate set of facts, which the court duly noted. The father in *Rollins* had not been making regular child support payments, and owed back support when he died. Moreover, the Rollins' marriage was on the rocks: Mr. and Mrs. Rollins had separated, and Mrs.

Rollins had filed a divorce petition that was pending at the time of Mr. Rollins' death. See 863 F.2d at 1348–49. But *Rollins* itself found that those facts made no difference under FEGLIA: "FEGLIA provides a rather simple priority of beneficiaries, without any reference to the common marital difficulties that often complicate real life.... We agree that in spite of the total collapse of the marriage the defendant technically qualifies as the widow of the insured within the meaning of the statute." *Id.* at 1349.

Despite that, *Rollins* went on to approve the constructive trust remedy in that case in the face of *Ridgway* and FEGLIA's language. But there is no meaningful distinction between *Ridgway*, *Rollins*, and this case. As it did in the SGLIA program at issue in *Ridgway*, Congress in FEGLIA has spoken "with force and clarity" in directing to whom insurance benefits are to be paid. Congress created no exceptions to its statutory scheme, and "courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990). It is within Congress' power to avoid any unpalatable results; but if Congress chooses to favor administrative efficiency over more equitable considerations, it is not our place to second-guess or try to bypass that decision.

The divorce decrees and constructive trusts in *Rollins* and in this case directly conflict with FEGLIA and with the Supreme Court's holding in *Ridgway*. Because of that conflict, we overrule *Rollins* and reverse the district court's judgment.

REVERSED.