PEDRO ENTERPRISES, INCORPORATED; Dale E. Perdue, individually and as personal representative of the estate of Doran E. Perdue; David A. Perdue; Debra R. Zisla; Doran E. Perdue, Jr.; Mary B. Perdue, and Raylene Bordfeld, Plaintiffs–Appellees,

v.

Margaret Sterling PERDUE, Defendant–Appellant,

and

Professional Administrators Limited Pension and Group Consultants, Incorporated, and Rex Ridgeway, Defendants–Appellees.

No. 92–3074.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1993.

Decided July 7, 1993.

Rehearing Denied Sept. 13, 1993.

Terry Noffsinger (argued), Noffsinger, Price, Bradley & Shively, Mary B. Perdue, Evansville, IN, for plaintiffs-appellees.

Jeffrey B. Kolb, Emison, Doolittle, Kolb & Roellgen, Vincennes, IN (argued), Brian P. Williams, Kahn, Dees, Donovan & Kahn, Evansville, IN, for defendants-appellees.

Before CUMMINGS, CUDAHY and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

This case raises the question whether an antenuptial agreement waives a surviving spouse's rights in a pension plan when the agreement makes no mention of pension benefits and the pension plan at issue was not even in existence at the time of the marriage. The plaintiffs are the five children—all adults now—of Doran and Ruth Perdue, along with an employee of Doran Perdue.[1] Doran Per-

---

1. One of the sons, Dale E. Perdue, is personal representative of his father's estate and asked the

due was the sole owner and president of Pedro Enterprises, Inc. After Doran's first marriage ended, Doran wed defendant Margaret Sterling Frickey (now Margaret Sterling Perdue). The day before the ceremony, on February 5, 1986, they signed an antenuptial agreement, which said in part:

> Each of the parties does hereby waive any intestate share and any expectancy which he or she may be entitled to receive in the event of the death of the other party. * * * In furtherance of the provisions of this paragraph 5.1, both of the parties agree that they will execute such other documents as may be necessary or desirable to effectuate the waivers in this paragraph * * *.

Some two-and-a-half years later, on September 30, 1988, Pedro Enterprises instituted a defined benefits pension plan regulated by federal law. Shortly after that, on February 29, 1989, Doran was killed in a car accident. Although he sponsored the adoption of the pension plan, Doran had failed to name a beneficiary for himself by the time of his death. The plan says that if no beneficiary is chosen, the deceased "shall be deemed to have designated * * * the Spouse of the Participant" (Exhibit A to complaint at p. 34). Thus Margaret claims that Doran's failure to name a beneficiary means that he wanted her to have the proceeds of his pension. However, the plaintiff stepchildren and Pedro employee maintain that the antenuptial agreement trumps the subsequent pension plan's default provision and that Margaret waived whatever rights she might have had to Doran's money when she signed the pre-wedding contract. We have federal question jurisdiction based on interpretations of the Internal Revenue Code, 28 U.S.C. § 1340, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132.

The district judge first held that the antenuptial agreement did not prevent Margaret Perdue from being the spousal beneficiary under the qualified pension plan. However, after the filing of a motion to reconsider, he reversed himself and held that she had no

rights under the plan, relying on this Court's opinion in *Fox Valley and Vicinity Construction Workers Pension Fund v. Brown*, 897 F.2d 275 (1990) (en banc), certiorari denied, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41. We conclude that *Fox Valley* is not controlling and, indeed, that summary judgment should be entered in Margaret Perdue's favor.

The district court relied on the antenuptial agreement Margaret Perdue executed before marriage. The court construed that agreement as divesting her of rights which might otherwise accrue from the marital relationship. However, by its own terms the antenuptial agreement was limited to property which passed by will or intestate succession; no language in the agreement suggests even faintly that the Perdues also intended to waive interests in non-probate transfers such as pension plans. It is worth noting that Doran was himself an attorney who, along with another lawyer, drafted the antenuptial agreement. It is thus unlikely that the deceased was unaware either of the terms of his agreement with Margaret or the default provisions of the pension plan, which clearly directs all money to be paid to the spouse when no other beneficiary has been named. If, as the plaintiffs maintain, Doran understood the antenuptial agreement to exclude Margaret from the later plan, then his failure to name a beneficiary for his pension was odd indeed given his intimate knowledge of the plan. The logical conclusion is that Doran understood the antenuptial agreement to mean what it said—that it did not apply to pension plans—and that his failure to select an alternative beneficiary signalled his intent that Margaret receive his pension if he died.

In *Fox Valley*, we considered the case of a man who named his wife as the beneficiary of his pension. The couple then divorced and executed an agreement under which "[t]he parties each waive[d] any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party." *Id.* at 277. After their divorce, the couple continued to

---

court to determine the rights of the parties. The plaintiffs also sued other defendants, but those

claims are not relevant to this appeal.

live together. Following the man's death, the woman claimed that she should receive her ex-husband's pension benefits because he allegedly did not understand the terms of their divorce agreement. In essence, the wife's claim was that her and her husband's waivers were not knowingly given. We disagreed.

There is a critical distinction between *Fox Valley* and the instant case, however. The divorce agreement in *Fox Valley* referred specifically to existing pension plans and retirement benefits so that the parties obviously intended to give up whatever rights they may have had in each other's non-probate benefits. Margaret's antenuptial agreement, on the other hand, makes no reference at all to future pension or retirement benefits and applies on its face only to assets passing through probate. Since the waiver in *Fox Valley* applied to plans that were already in existence when the divorce decree was signed, the couple must have known exactly what they were giving away. In this case, the Pedro pension plan had not been formed when the antenuptial agreement was signed. Neither Margaret nor Doran could have known that their pre-marriage agreement would strip Margaret of her rights to Doran's pension because no pension existed at the time. The only parallel between *Fox Valley* and the instant case is that they both involve agreements to waive certain rights to which the parties might otherwise be entitled. There the similarity ends—one involves a divorce decree, the other an antenuptial agreement; one waiver refers to pension benefits, the other does not; one pension plan existed when the waiver was signed, the other did not. While the plaintiffs in *Fox Valley* argued that the waiver should not be given effect, the question in the present case is whether there was waiver to begin with. Not even the marriage status of the plaintiffs in the two cases are the same.

■ The fact that the pension plan did not exist when Margaret and Doran signed the antenuptial agreement is significant for another reason besides distinguishing *Fox Valley*. Federal law sets forth the procedures under which a spouse can waive his interests in a qualified joint and survivor annuity form of benefit. Under ERISA, a spouse gives up his share of a pension only if he consents to the waiver in writing. 29 U.S.C. § 1055(c)(2)(A)(i). The Internal Revenue Code has a similar requirement of written waiver in 26 U.S.C. § 417(a)(2). See also Treasury Regulation § 1.401(a)-20 (1991). In addition to the writing, the waiver "must acknowledge[ ] the effect of such election and [be] witnessed by a plan representative or a notary public * * *." 29 U.S.C. § 1055(c)(2)(A)(i). Although the antenuptial agreement was written (but not notarized), we understand the ERISA requirements of acknowledgement, writing and notarization to reflect the concern that any waiver be knowing and considered. It is self-evident that a waiver cannot be knowing and considered if the thing to be relinquished has not yet been conceived of by the employer.

■ Thus in *Zinn v. Donaldson Co., Inc.*, 799 F.Supp. 69, 73 (D.Minn.1992), a wife's generalized consent to abide by the terms of her husband's will was not a sufficiently specific waiver of pension benefits under ERISA. And in *Hurwitz v. Sher*, 982 F.2d 778 (2d Cir.1992), certiorari denied, ─ U.S. ─, 113 S.Ct. 2345, 124 L.Ed.2d 255, an antenuptial agreement which failed to specify an alternative person to receive pension benefits did not constitute waiver. We agree fully with *Hurwitz v. Sher* that under ERISA's regulation of qualified profit-sharing plans, antenuptial agreements do not waive spouses' rights to survivor benefits. In holding that antenuptial agreements lacking ERISA waiver requirements do not constitute effective waivers, the Second Circuit relied on three well-considered district court decisions as well as Judge Patterson's *Hurwitz* opinion in the district court reported in 789 F.Supp. 134 (S.D.N.Y.1992), which distinguished *Fox Valley*. While the plaintiffs rely on *Rollins v. Metropolitan Life Ins. Co.*, 863 F.2d 1346 (7th Cir.1988), we overruled that case last year. *Metropolitan Life Ins. Co. v. Christ*, 979 F.2d 575, 578 (1992).

■ Finally, the antenuptial agreement itself provides an escape hatch by noting that either party may consent to give any part of his estate to the other party "in writing." Arguably, the pension plan with its default

provision in favor of the spouse was just such a writing. Thus even if we had held that the antenuptial agreement constituted a valid waiver, the pension plan could be construed as a waiver of the waiver, particularly in these circumstances where Doran was knowledgeable about the terms of both the antenuptial agreement and the pension plan.

The judgment below is reversed and the case is remanded with instructions to enter summary judgment for defendant Margaret Perdue. On remand, it will be appropriate for the district judge to determine the worth of Margaret's interest and to reinstate her cross-claim against the administrator and sponsor of the pension plan, Professional Administrators Limited Pension and Group Consultants, Inc. ("PAL–PGC") and Rex Ridgeway. The district court found that Margaret lacked standing to bring a cross-claim because she was neither a beneficiary nor participant. Obviously, our holding today alters that judgment. We offer no opinion, however, about the fiduciary status of PAL–PGC or Ridgeway, a question the district court preserved for later adjudication.