Barbara Jean CUMMINGS, a minor, by her Guardian ad Litem, Willard P. TECHMEIER, and Laverne H. Cummings, Special Administratrix of the Estate of Dennis G. Cummings, Plaintiff-Appellees, Cross-Appellants,

v.

BRIGGS & STRATTON RETIREMENT PLAN, the First Wisconsin Trust Company, Plan Trustee, and Briggs & Stratton Retirement Committee, Plan Administrator, Defendants-Appellants, Cross-Appellees.

No. 85–2871, 85–2936.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1986.

Decided July 21, 1986.

David R. Cross, Quarles & Brady, Milwaukee, Wis., for defendants-appellants, cross-appellees.

Willard P. Techmeier, Techmeier, Sheedy & Associates, Milwaukee, Wis., for plaintiff-appellees, cross-appellants.

Before BAUER and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

The issue in this case is whether a district court has inherent or statutory equitable power to fashion a constructive trust in favor of a plaintiff who has no entitlement to benefits under ERISA. Although we do not deny that pension beneficiaries may bring civil actions under ERISA to obtain appropriate equitable relief, we cannot approve such relief where there is no violation of ERISA under the written terms of the plan. For the reasons set out below, we reverse the district court's grant of summary judgment, 606 F.Supp. 659, in favor of the plaintiffs.

I

The decedent, Dennis G. Cummings, was an employee of Briggs & Stratton Corporation, hired in 1952. He was a participant in the Briggs & Stratton Retirement Plan ("the Plan"), an employee-benefit program bargained for with the Allied Industrial Workers, Local 232 ("the Union"), and incorporated into the collective bargaining agreement. Defendant First Wisconsin Trust Company is trustee of the Plan. Defendant Briggs & Stratton Retirement Committee ("the Committee") is the administrator of the Plan. Defendant Frank Sprtel is a member of the Committee.

The Plan does not contain an automatic survivorship feature. Rather, participants must affirmatively *elect* a payment option that would include payment to a surviving spouse or beneficiary. Among the options available is a "Ten Year Certain and Life Option" (Article VI, § 604(a) of the Plan). It provides that a Plan participant may elect to receive a reduced pension payable until death, and if the Plan participant's death occurs before the pension has been paid for ten years, payment of the pension will be made in the reduced amount to a beneficiary designated by the Plan participant for the balance of the ten-year period. The total benefits to the participant receiving a reduced monthly pension during his lifetime and the participant's beneficiary are actuarially equivalent to a single life pension without any provisions for his survivors.

The Union has sought to modify the Plan so that survivorship benefits are paid automatically, without election, at a participant's death. As it stands now, if a participant does not elect one of the survivorship options, no benefits are payable to anyone at the time of the participant's death. Briggs & Stratton has opposed an automatic survivorship benefit provision because of the substantial additional expense of funding this feature. Because Briggs & Stratton has prevailed on this bargaining point, the Plan does not provide for automatic survivorship benefits.

On May 15, 1982 Cummings was divorced in Milwaukee County Circuit Court. The decree of the divorce provided, in part:

9. That all of the rights of the defendant in his pension program at Briggs & Stratton Corporation are awarded to him and the plaintiff is divested of all right, title and interest therein providing, however, that the defendant shall change the beneficiary therein to the name of the *minor children of the parties and each* child shall be divested of such right when he or she reaches the age of eighteen (18) years.

At the time the divorce decree was entered into, Cummings was not eligible to desig-

nate his daughter, Barbara Jean, as a beneficiary. None of the defendants were parties to the divorce proceedings. Briggs & Stratton's employment record includes information that Cummings was divorced, but it is undisputed that none of the defendants had knowledge of the terms of the decree.

In 1978 when Cummings approached his sixtieth birthday, the Committee mailed him information about the "Fifty Percent Joint and Survivorship Pension Option" available under sections 6.1 and 6.2 of the Plan. This option provides for payment of a monthly annuity to the spouse of the Plan participant, if the participant should die before retiring from the Company. No other beneficiary could be named. Cummings replied that he would not elect the option, stating: "I am single and not eligible for this retirement plan."

On December 4, 1981, when Cummings approached his thirtieth year of service with Briggs & Stratton, the Committee mailed him a packet of information explaining the pre-retirement options for which he was now eligible. The options included the "Ten Year Certain and for Life" option which allowed him to choose someone as his beneficiary in the Plan in the event of his death; by choosing that option, Cummings would receive a reduced pension during his lifetime. Cummings did not respond to this mailing.

In May 1982 Cummings was diagnosed as having lung cancer. On May 13 Cummings was terminated by Briggs & Stratton because of his illness. Shortly thereafter, it was determined that his condition was terminal. He was hospitalized, but returned home in late June. Cummings gradually became mentally confused and disoriented.

On June 29, 1982 the Committee mailed Cummings the same information sent to him previously. Both packets of information contained the following warning notice: "NOTE: If you do not elect a survivorship option, no one will receive any pension benefits if you die while still employed." However, Cummings did not complete and return the application form for survivorship benefits.

Cummings died on August 1, 1982. To the date of his death, he had never received any benefits from the Plan. He had not designated his daughter, Barbara Jean, his only surviving minor child, as a pension beneficiary; had he done so, the beneficiary would have been entitled to a monthly payment of $642.58 commencing on the first day of the month following Cummings' death.

On August 11 Barbara Jean Cummings, through an attorney, wrote to the Committee requesting a statement of the amount of benefits due her. Frank Sprtel, representing the Committee, replied that no benefits were due; when Barbara Jean made a second request for information in March 1983, the Committee reiterated that no benefits would be paid.

Plaintiffs Barbara Jean and LaVerne Cummings (the former spouse and special administratrix of the Cummings' estate) filed an action for benefits and statutory penalties under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs contended that the Plan must pay survivorship benefits to Barbara Jean according to the provision in the divorce decree even though Cummings did not elect a survivorship option under the Plan. Plaintiffs also alleged that defendants filed to comply with requests for information in violation of ERISA, entitling them to statutory penalties.

Plaintiffs began their lawsuit on June 2, 1983. Defendants filed a motion for summary judgment dismissing the complaint on the grounds that under the written terms of the Plan, survivorship benefits are not payable automatically when a Plan participant dies. Plaintiffs also filed for summary judgment on the basis that defendants did not adequately inform Cummings of his rights to elect a survivorship option and that defendants knew or should have known of Cummings' state of mental confusion.

In its decision of April 19, 1985 the district court granted defendants' motion to dismiss Sprtel and denied plaintiff's motion for statutory penalties for the alleged failure to comply with a request for information. The district court, on the other hand, granted summary judgment for plaintiffs on the ground that the Plan would be "unjustly enriched" if it did not pay benefits to plaintiffs.

On September 27, 1985 the district court denied defendants' motion for reconsideration and entered judgment for the plaintiffs in the amount of $59,713.67, plus interest. Defendants appeal that judgment, and plaintiffs cross-appeal on the calculation of damages.

## II

The issue here is initially straightforward. This is an action for benefits and statutory penalties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. All employee benefit plans must be "established and maintained pursuant to a written instrument," section 1102(a)(1), and ERISA plan administrators are required to act consistently with the Plan's written terms. Plan fiduciaries are required to act solely in "accordance with the documents and instruments governing the plan." Section 1104(a)(1)(D). In fact, the 1984 amendment to ERISA specifically forbids the assignment or alienation of plan benefits unless called for under the Plan.[1]

ERISA also requires that the description "be written in a manner calculated to be understood by the average plan participant and ... be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 28 U.S.C. § 1022(a)(1). It is uncontested that the summary plan description for Briggs & Stratton was complete and accurate. In addition, Briggs & Stratton sent Cummings two letters, including clear warnings of the effect of not designating a surviving beneficiary.

There is no question that the written terms of the Briggs & Stratton Retirement Plan met the requirements of ERISA, or that under the terms of the Plan the plaintiffs were not entitled to receive benefits. The Plan lacks an automatic survivorship feature; therefore, the option for payment to a surviving beneficiary under Article VI, § 6.14(a), the "Ten Year Certain and Life Option," requires affirmative election. Under the technical terms of the Plan, defendants violated no provisions of ERISA and committed no legal wrong.

There is also no question that the Plan administrators had not violated any fiduciary responsibility mandated by ERISA. Briggs & Stratton took the steps it was required to make under the law: it printed an accurate plan summary for its 10,000 Plan participants, made an office available, and mailed information with respect to the elective options. In a similar case, where the decedent did not make any effort to contact a knowledgeable company employee for further information or explanation, the district court held that the plan administrator satisfied the fiduciary obligation owed to the decedent. The court explicitly stated that "fiduciaries are not expected to provide individualized attention to participants." *Lee v. Union Elec. Co.*, 606 F.Supp. 316, 321 (E.D.Mo.1985). An opposite interpretation would impose an almost impossible burden on ERISA plan administrators to seek out and maintain sufficient current information about the health and individual needs of each plan member to enable the administrators to render personal service. *Allen v. Atlantic Richfield Retirement Plan*, 480 F.Supp. 848, 850 (E.D. Pa.1979), *aff'd*, 633 F.2d 209 (3d Cir.1980).

In the instant case, the district court acknowledged that the Plan administrators

---

1. The Retirement Equity Act of 1984 (effective January 1, 1985) amends section 206(d) of ERISA, 29 U.S.C. § 1056(d), as follows:
 Assignment or alienation of plan benefits.

 (1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

had fulfilled their fiduciary duty, concluding:

> In the present case, the Retirement Committee has been essentially passive with respect to the benefits in question. If there has been any wrongdoing, it is attributable to Dennis Cummings.

*Cummings by Techmeier v. Briggs & Stratton Ret.*, 606 F.Supp. 659, 664 (E.D. Wis.1985). The defendants had clearly complied with both the written terms of the Plan and their fiduciary duties. That should have ended the matter.

However, the district court based its opinion on the "unusual circumstances" of this case. A second written document conflicted with the Plan: the divorce decree negotiated between Dennis Cummings and his former wife, LaVerne Cummings (now special administratrix of the Cummings' estate), in which she divested herself of all right, title, and interest in Dennis Cummings' pension in exchange for his promise to change the beneficiary under the pension to name his minor children. At the time Cummings signed the decree, he was not yet eligible to designate a wife or child. When he reached his thirtieth year of employment and was offered the chance to respond and elect to name his child as a beneficiary, he did not do so.

Therein lies the difficulty with this case. The district judge was faced with a situation where the technical written requirements of ERISA had been satisfied by the defendants, as had their fiduciary responsibilities. But the equally compelling written terms of the divorce decree had been violated. Dennis Cummings had not done for his child what he had promised to do, and what his former wife had bargained for in the course of the divorce proceedings. The minor child consequently lost financial benefits she would have been entitled to receive from her father's estate.

The recent amendments to ERISA of the 1984 Act explicitly deal with this dilemma, recognizing a "qualified domestic relations order" and allowing payments of benefits pursuant to it.[2] That new provision contains requirements: the domestic relations order must specify the participant's payee, the amount to be paid, and the plan to which the order applies. Most importantly, the amendments allow payment only if the domestic relations order does not require a benefit not otherwise provided for under the plan. The divorce order cannot create a new pension benefit where none existed, increase benefits, or require an alternate payee.[3]

 It is true that a judge may treat domestic orders entered before the 1985 effective date of the amendments as "qualified" domestic orders even though the documents do not meet the new requirements;[4] there are, however, strong reasons why we should not treat the Cum-

---

**2.** The prohibition on assignment or alienation of plan benefits of section 206 of ERISA, 29 U.S.C. § 1056, Retirement Equity Act of 1984 (effective January 1, 1985) has an exception for:

3(A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

**3.** Section 206(D) of ERISA, 29 U.S.C. § 1056, reads:

A domestic relations order meets the requirements of this subparagraph only if such order—

(i) does not require a plan to provide any type or form of benefits, or any option, not otherwise provided under the plan.
(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and
(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

**4.** In the case of a domestic relations order entered before January 1, 1985 (such as the Cummings' divorce decree), the pension plan administrator "shall" treat such order as a qualified domestic relations order if the administrator is paying benefits pursuant to "such order on such date" (which does not apply here), or "may so" treat the order even though it does not meet the requirements of such amendments.

mings' decree as overriding the written terms of the Briggs & Stratton Plan. Notice of Cummings' divorce was never made part of the records at Briggs & Stratton. Plaintiffs concede that the Plan administrators had no knowledge of the decree's provisions. Briggs & Stratton had no legitimate reason to expect to pay benefits to any beneficiary named by Cummings; benefits made payable to Cummings' minor child ordered by the court would be created where none existed before.

The funding for the Briggs & Stratton Plan, like any pension plan's funding, depends on stability and predictability. Sound administration of a pension plan demands advance planning. Forcing trustees of a plan to pay benefits which are not part of the written terms of the program disrupts the actuarial balance of the Plan and potentially jeopardizes the pension rights of others legitimately entitled to receive them. As the Eighth Circuit has emphasized in *Phillips v. Kennedy*, 542 F.2d 52, 55 n. 8 (8th Cir.1976), there is danger when courts tamper with the written terms of a pension plan: "The actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan."

■ The doctrine of "unjust enrichment," which was invoked by the district court, does not make sense in this context of actuarial planning. A pension fund is not "unjustly enriched" where a pensioner dies early with no benefits payable to his survivor. That eventuality simply offsets cases where a pensioner lives well into old age and more benefits are paid to him than were statistically predictable. There are sound reasons why Cummings' divorce decree should not alter the written terms of his pension plan to create a beneficiary where none existed before.

■ At this point, however, we must address the most troublesome aspect of this case: the unresolved ambiguity concerning the reason why Cummings failed to elect the survivorship option. Our discussion to

date has assumed that Cummings made a conscious rational choice to trade higher lifetime pension payments for himself by not electing to designate a surviving beneficiary. But plaintiffs have argued in district court that Cummings made his choice out of mistake or confusion, aided and abetted by Briggs & Stratton. In opposing the grant of summary judgment in favor of Briggs & Stratton, plaintiffs alleged that the plan administrators did not adequately inform Cummings of his right to elect a survivorship option, that he was confused about his rights under the Plan, and that defendants knew or should have known of his confusion.

At the district court proceedings, plaintiffs' counsel alleged that Dennis Cummings was unsophisticated in business matters, relied on the personnel at Briggs & Stratton, and should have been made aware by a telephone call of his options. Counsel also raised a question as to the degree of awareness of Briggs & Stratton as to the divorce decree and its terms. Finally, counsel alleged that at the time Cummings was mailed the second notice in May 1982, he was incapacitated and could not accept the certified letter at his door; therefore, the letter was returned to Briggs & Stratton as undeliverable. Dist.Ct.Tr., pp. 14, 17, 20, 21.

All of the above allegations amount to a serious charge of breach of fiduciary duty against Briggs & Stratton. Yet, because plaintiffs' motion to compel discovery on this issue was made in an untimely fashion and denied by the district court, we are given no hard, factual material to prove that Briggs & Stratton's plan administrators did less than they would normally do, much less that they affirmatively misled Cummings. Plaintiffs do not raise this issue in their appeal. Indeed, at oral argument, plaintiffs' counsel agreed that no additional notice to Cummings was required. Were such evidence of fiduciary breach before us, this would be a different case, but in its absence we cannot find that Briggs & Stratton acted in an unusual or

unfair manner so as to justify a constructive trust.

■ The district court concluded, nevertheless: "Yet the mere fact that the defendants may have received the proceeds innocently is itself no bar to the imposition of a constructive trust." *Id.* We disagree. There is no property "owned" by the third-party beneficiary, Barbara Cummings, illegally retained by the pension fund. Thus, we distinguish the insurance cases relied on by the district court where there is a settlement due someone and the issue is whether the property is justly being held in the right hands.[5] *See, e.g., Richards v. Richards,* 58 Wis.2d, 290, 297, 206 N.W.2d 134, 137 (1973).

Enrichment is not "unjust" where it is allowed by the express terms of the pension plan. *Craig v. Bemis Co.,* 517 F.2d 677, 684 (5th Cir.1975). The Restatement of Restitution makes clear that "a person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed ... the other should give in return." Section 107, & Comment 1. We conclude that the basic elements that make up a claim of unjust enrichment are simply not present in the case before us.

■ This is not to suggest that when a legal wrong *has* occurred that a district court does not have a full panoply of equitable powers to fashion appropriate relief. Imposition of a constructive trust may be an appropriate remedy where pension administrators are guilty of a breach of fiduciary responsibility. The Supreme Court has historically emphasized the inherent equitable jurisdiction of district courts. *See, e.g., Mitchell v. DeMario Jew-*

*elry,* 361 U.S. 288, 291, 80 S.Ct. 332, 334, 4 L.Ed.2d 323 (1960), which states explicitly that "unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction."

■ The district court also has statutory equitable jurisdiction; ERISA provides that a pension beneficiary may bring a civil action to obtain "appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B). The enforcement provisions of ERISA are intended to provide broad, flexible remedies to redress or prevent statutory violations. *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 302 (7th Cir.1985). In appropriate circumstances, courts may develop a federal common law governing employee benefit plans in order to supplement the statutory scheme. *Amato v. Western Union Intern., Inc.,* 773 F.2d 1402, 1419 (2d Cir.1985); *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1499 (9th Cir. 1984).

■ However, where Congress has established an extensive regulatory network and expressly announced its intention to occupy the field, federal courts should not create additional rights under the rubric of federal common law. We are particularly reluctant to fashion a federal common law doctrine of unjust enrichment when such a right would override a contractual provision in a pension plan. The existence of such a contract, negotiated between the parties, requires a particularly strong indication that the unjust enrichment doctrine will vindicate an important statutory policy. *Van Orman v. American Ins. Co.,* 680 F.2d 301, 306, 310–13 (3d Cir.1982). In only limited circumstances

---

**5.** We disagree with the district court that the pension setting is analogous to the insurance setting. See *Cummings by Techmeier v. Briggs & Stratton Ret.,* 606 F.Supp. at 664. In an insurance case where a party designates a beneficiary under a policy agreement and ignores a final divorce decree requiring that a different party be so designated, there is a definite settlement due some person. Because the insurance company is obligated to pay benefits, the divorce decree has created an equitable right in those funds to one party. Designation of a beneficiary other than the one contemplated by the divorce decree causes unjust enrichment and is properly remedied by a constructive trust. However, in the pension case before us, there are no benefits due any third party under the written terms of the Plan, because the Plan participant failed to elect those benefits. Thus, there is no equitable right and no proper place for a constructive trust.

will courts need to supplement the specific statutory sections. *Amato*, 773 F.2d at 1419. The case at bar does not present one of those circumstances.

 By this decision, we do not diminish the inherent and statutory equitable power of the federal courts in ERISA cases. Instead, we restrict that power to its proper use—to remedy violations of the Act. For the reasons given above, we reverse the district court's grant of summary judgment in favor of plaintiffs and grant the summary judgment dismissing the complaint in favor of the defendants.

REVERSED.