**HEALTH AND WELFARE PLAN FOR EMPLOYEES OF REM, INC., and Douglas Miller, Plan Administrator, Plaintiffs,**

v.

**James B. RIDLER, Vickie Madsen, and Renville County, Defendants.**

Civil No. 3–96–591.

United States District Court,
D. Minnesota,
Third Division.

Oct. 11, 1996.

Thomas L. Henderson, Thomas H. Lawrence, McKnight, Hudson, Lewis & Henderson, P.L.L.C., Memphis, TN, and Dean R. Karau, Fredrickson & Byron, P.A., Minneapolis, MN, for Plaintiffs.

James F. Lord, Miles Lord & Associates, Chanhassen, MN, for Defendant James B. Ridler.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### INTRODUCTION

Presently before the Court is the motion of Plaintiffs Health and Welfare Plan for Employees of REM, Inc. (hereafter, "The Plan"), and Douglas Miller (hereafter, "The Administrator") for summary judgment. For the following reasons, the motion is granted.

### BACKGROUND

Defendant Ridler was injured in a motorcycle accident in 1991. As an employee of REM, Inc., he was covered by the medical benefits Plan sponsored by his employer. Since the accident, the Plan has paid over $400,000 for Ridler's medical expenses. Ridler commenced suit in state court against persons alleged to have been responsible for his accident. Ridler has settled with two of those defendants, who have paid a total of $450,000 into state court pending the outcome of the present dispute. The Plan seeks reimbursement of the medical expenses it has paid, pursuant to the Plan's subrogation provisions. (Karau Aff.Ex. A., Claims and Legal Action at 9.) Ridler refuses.

## DISCUSSION

### I. ERISA

■ Employee benefit plans established pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, are exempted from state regulation. The responsibilities of the Plan and the rights of Plan participants are accordingly governed by the terms of the Plan. The Plan vests the Administrator with discretion to interpret those terms, which permits the Court to review the Administrator's determinations only for an "abuse of discretion." *Cox v. Mid–America Dairymen*, 965 F.2d 569, 571 (8th Cir.1992). The Administrator has exercised that discretion to determine that the Plan is entitled to reimbursement. (Miller Aff. at 3.) This determination is consistent with the subrogation clause, which provides that the Plan "may recover from the covered person any payment for the benefits [1] the covered person receives from the third party." (Karau Aff.Ex. A., Claims and Legal Action at 9.)

### II. Status of Plan and Preemption

■ Ridler suggests that the Plan is not, in fact, a "plan" established pursuant to ERISA. Ridler does not offer specific facts in this motion to controvert the Administrator's description of the Plan as self-insured and maintained "for the purpose of providing its participants and their dependents" medical benefits. (Miller Aff. at 1–2.) Absent controversy, the Administrator's affidavit is sufficient to establish the Plan as one qualified under ERISA. *Petro v. D.W.G. Corp.*, 148 Wis.2d 725, 436 N.W.2d 875, 876 (Ct.App. 1989). Ridler has previously argued that because the Plan has obtained "stop-loss" coverage for medical benefit expenses which exceed $25,000, it is not "self-insured" for ERISA preemption purposes.[2] Ridler asserts that the Plan's motion should be denied because discovery is needed to determine if the Plan is self-funded or not.

■ The existence of an ERISA plan is a mixed question of law and fact. *Kulinski v. Medtronic Bio–Medicus*, 21 F.3d 254, 256 (8th Cir.1994). In the absence of disputed facts, the question is one of law for the court. *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir.1993). Ridler has not submitted evidence that the Plan has obtained stop-loss insurance, and thus he has not complied with the standards prescribed in Fed.R.Civ.P. 56(e) and (f). Ridler has neither attested by personal knowledge "specific facts showing that there is a genuine issue for trial," nor demonstrated through affidavits why he is unable to present such evidence at this time. Nevertheless, the Court will assume that the Plan has obtained stop-loss insurance. In resolving the prior motion for a preliminary injunction, the Court did not find it necessary to determine the effect of stop-loss insurance on the preemption to which an ERISA plan is entitled. However, the Order notes the Court's concurrence with the majority of cases holding that stop-loss insurance does not transform an ERISA plan into one subject to state regulation. (Order dated July 3, 1996, at p. 8 n. 5.) This issue may now be squarely addressed in a holding to that effect.

The Supreme Court in *FMC Corp. v. Holliday*, 498 U.S. 52, 64–65, 111 S.Ct. 403, 410–11, 112 L.Ed.2d 356 (1990) held that ERISA preemption did not extend to the insurance relationship between a qualified plan and its insurer; where an ERISA plan is insured it is thus subject to "indirect" state regulation. However, "*FMC* does not hold that states are free to regulate ERISA plans insofar as the plans are insured." *Lincoln Mut. Cas. Co. v. Lectron*, 970 F.2d 206, 210 (6th Cir.1992). *Lincoln Mutual*, among other cases decided in the Sixth Circuit post-*FMC*, recognizes that prior Sixth Circuit cases on which Ridler relies for his contentions regarding stop-loss insurance have effectively been overruled. *See Lincoln Mutual*, 970 F.2d at 210 n. 3 (*Northern Group Services, Inc. v. Auto Own-*

---

1. The term "benefits" is not defined in any of the documents supplied to the Court. Neither party has suggested that it means, in this context, anything other than "tort or other obligation" incurred by a third party.

2. This contention was made in Ridler's memorandum in opposition to Plaintiffs' motion for a preliminary injunction. The Court denied that motion on other grounds in an Order dated July 3, 1996.

*ers Ins. Co.,* 833 F.2d 85 (6th Cir.1987) "no longer viable"); *Auto Club Ins. Ass'n. v. Safeco Life Ins. Co.,* 833 F.Supp. 637, 642–43 (W.D.Mich.1993) (noting overruling of *Michigan United Food & Commercial Workers Unions v. Baerwaldt,* 767 F.2d 308 (6th Cir. 1985)). Ridler does not address these developments. Consistent with *FMC* and this Court's prior suggestion, the Court holds that stop-loss insurance does not negate ERISA preemption. Accordingly, the Plan is a "plan" under ERISA. Because the Administrator's discretionary interpretation is consistent with the reimbursement clause, Ridler must reimburse the Plan to the extent of the Plan's lien interest from the funds paid into state court.

### III. Settlement Agreement

■ Ridler next argues that even if the Plan is entitled to preemption, it has voluntarily foregone such protection by agreeing to compromise the disputed claim. This contention is without merit. On March 13, 1996 a representative of the Great West Life and Annuity Insurance Company (to whom the Administrator delegates certain non-discretionary Plan functions) offered to compromise the reimbursement claim for $137,443.00, which was exactly 50% of the $274,886.39 which had been paid in benefits by that time. (Lord Aff.Ex. A.) The representative attests that Ridler's attorney rejected the offer on June 3, 1996 and made a counter-offer that Great West forego reimbursement, but set-off future payments against its reimbursement interest, which by then totaled $408,000.00. (7/1/96 Reis Aff.) This counter-offer was rejected. (*Id.*) The representative attests also that Ridler's attorney stated his intention to seek resolution of the reimbursement issue in state court. (*Id.*) The representative interpreted these

statements as constituting a rejection of the March 13, 1996 offer. (*Id.*) Nevertheless, Ridler's attorney sent a letter to Great West on June 13, 1996, purporting to accept the offer. (Lord Aff.Ex. B.)

■ Ridler does not dispute the factual transactions described, but argues their legal significance. For example, in an affidavit untimely submitted during oral argument, Ridler's attorney states, "That I did request Great Western [sic] to consider the option of reducing the One Million Dollar ($1,000,-000.00) cap by the amount paid. This was not a rejection of their offer, but merely testing to see if they would go further." (10/4/96 Lord Aff. para. 4.) A counter-offer on terms different than those of the original offer constitutes a rejection of that offer. *Crince v. Kulzer,* 498 N.W.2d 55, 57 (Minn. Ct.App.1993).[3] Moreover, an offer generally must be accepted within a reasonable time, depending on the circumstances existing at the time of the offer and at the time of the acceptance. Restatement (Second) of Contracts § 41. Given that the March 13, 1996 offer was obviously premised upon a willingness of Great West's part to accept 50% of its reimbursement interest, Ridler's purported acceptance at a time when that interest was worth $130,000.00 more is not one made within a reasonable time.

### IV. Attorney's Fees

■ Ridler next suggests that fact issues remain concerning the amount of attorney's fees paid by Ridler to secure his tort recovery; he argues that the Plan's lien interest should be reduced accordingly. Several district courts have permitted ERISA plan participants to deduct fees incurred in procuring tortfeasor settlements from the amounts owed in reimbursement to their re-

---

**3.** While the Administrator suggests that federal common law principles are applicable to resolve the contractual obligations of the parties, this is questionable. Federal common law is expected to be developed by federal courts deciding questions in ERISA actions. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989). However, a settlement agreement does not "arise under" (to borrow a jurisdictional term) ERISA or the Plan language, and its enforceability would

appear to be a question of state law. This distinction is immaterial here because the Court finds that Ridler made a counter-offer, and the effect of that offer is the same under either Minnesota law, or the common law of contracts which the Court would adopt as federal common law. *See* Restatement (Second) of Contracts § 39. Because both recognize that a counter-offer effects a rejection of the original offer, it is unnecessary to explore here whether ERISA-related settlement agreements are governed by federal common law.

spective plans. *See Serembus v. Mathwig,* 817 F.Supp. 1414, 1423 (E.D.Wis.1992); *Dugan v. Nickla,* 763 F.Supp. 981, 984 (N.D.Ill. 1991); *Waller v. Hormel Foods Corporation Medical Plan,* No. 3–95–116, 1996 WL 724134 (D.Minn. March 26, 1996). While this is an equitable proposition, none of these cases identify a basis in ERISA for such fee-shifting. Perhaps the most candid assessment appears in *Carpenter v. Modern Drop Forge Co.,* 919 F.Supp. 1198, 1206 (N.D.Ind. 1995), where these results are explained and justified by reference to "the inherent and equitable authority of the court to determine what is fair." However, as has been observed elsewhere, federal judges "do not sit as federal chancellors confecting ways to escape" laws which create results which may not seem abstractly "fair." *In re Samuels & Co., Inc.,* 526 F.2d 1238, 1242 (5th Cir.1976) (en banc). Rather, the task of the Court is to interpret the Plan—or more precisely, defer here to the reasonable interpretation of the Plan's Administrator. The Plan nowhere qualifies the right to reimbursement by reference to the costs associated with the recovery. The interpretive tool of a growing body of federal common law applicable to ERISA actions is not a license to rewrite the Plan to the Court's tastes. The Court declines Ridler's invitation to do so.

### V. Amount of Lien

Finally, Ridler points to a clerical error made by the Plan in determining the amount which the Plan was owed. The Plan has admitted double-counting two items of expense. (10/1/96 Reis Aff. para. 4.) While Ridler now disputes the amount of the items, upon close inspection, it is clear that no genuine dispute exists. The double-counted items include charges incurred at North Memorial Hospital for $28,535.80 and $1,243.98. (Dahlin–Danielson Aff.Ex. A.) Thus, Ridler claims an overcharge of $29,779.78. However, the same invoice upon which Ridler relies shows that the actual payment made by the Plan for these two charges was $26,525.00. (10/1/96 Reis Aff. para. 4; Dahlin–Danielson Aff.Ex. A.) The Plan's interest has been adjusted to reflect this payment, and amounts to $406,114.50. (Reis Aff. para. 5.)

### CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment is GRANTED and Plaintiffs are subrogated to Defendant's interest in settlement proceeds paid into state court, in the amount of $406,114.50. Should these funds be released directly to Defendant, Defendant shall immediately tender this amount to Plaintiffs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**