IBP, INC., Plaintiff,

v.

**Michael L. FOUST, et al., Defendants.**

No. C 97–4005.

United States District Court,
N.D. Iowa,
Western Division.

Dec. 1, 1997.

---

2. Docket No. 22.

Theodore F. Sporer, W. Des Moines, IA, for plaintiff.

Willis J. Hamilton, Storm Lake, IA, for defendants.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

ZOSS, United States Magistrate Judge.

### I. INTRODUCTION

This dispute concerns whether an employee benefit plan with a "full reimbursement" subrogation provision must contribute to the legal expenses incurred by a plan participant to recover from a third party tort-feasor.

On June 24, 1997, the parties consented to have this matter decided by the undersigned United State Magistrate Judge under 28 U.S.C. § 636(c) (Docket No. 10). Plaintiff IBP, Inc. filed a Motion for Summary Judgment on August 29, 1997 (Docket No. 12). On September 15, 1997, the defendants resisted the motion (Docket No. 16), and filed a

Motion to Dismiss (Docket No. 18). The Motion to Dismiss has not been resisted. These motions are now deemed fully submitted.

## II. FACTUAL BACKGROUND

### A. Undisputed Facts

The plaintiff IBP, Inc. ("IBP") operates a fully-qualified, self-funded ERISA[1] Employee Benefit Plan (the "Plan"). IBP is the employer and administrator of the Plan. Defendant Michael Foust was an employee of IBP and a beneficiary of the Plan. The other two defendants, Michelle Foust and Cory Foust, are his daughter and son.

On April 16, 1992, Michelle and Cory were in an automobile accident in which they suffered personal injuries requiring medical treatment. The Plan paid out medical benefits totaling $7,351.72 — $6,417.34 on behalf of Cory and $934.38 on behalf of Michelle. In addition, the Fousts recovered $485,000 from a third-party tort-feasor. IBP claims a subrogation right against the Fousts' recovery based on the following Plan language:

As a condition to receiving benefits under this Medical Plan, Participants and Covered Family Members receiving medical benefits agree to transfer in full to the Medical plan their rights to recover damages for these benefits when the injury or illness occurs through the act or omission of another person. If benefits paid under the Medical Plan are recovered by Participant or Covered Family Member from another person or business entity, the Medical Plan will be reimbursed in full. No repayment agreement is required to be signed. Subrogation or reimbursement rights require only that the injury occur through the act of a third party. The Medical Plan's rights of full recovery may be from the Participant, or covered Family Member, the third party, any liability or other insurance covering the third party, the insured's own uninsured motor insurance, underinsured motorist insurance, any medical payments, no fault or school insurance coverages which are paid or payable. The Medical Plan may enforce its right of subrogation by requiring the employee to assert a claim to any of the foregoing coverages to which he/she may be entitled. The Medical Plan will not pay fees or costs associated with a claim/lawsuit without express written authorization.

Although the Fousts have paid nothing to the Plan, they admit their obligation to reimburse the Plan for the medical benefits, but only after they have deducted a pro rata share of the attorneys' fees paid to obtain the recovery. (Def.'s Resistance to Pl.'s Mot. for Summ.J., at 2.)

### B. Disputed Facts

There are no disputed material facts.

## III. LEGAL ANALYSIS

### A. Standards for Summary Judgment

The standards for summary judgment have been described in detail in several recent decisions in this district. For example, the court in *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F.Supp. 805 (N.D.Iowa 1997), outlined these standards as follows:

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex*, 477 U.S. at 327,

---

1. Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

106 S.Ct. at 2554–55); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992). *Lockhart*, 963 F.Supp. at 813–15.

In *McPeek v. Beatrice Co.*, 936 F.Supp. 618 (N.D.Iowa 1996), an ERISA case, the court stated the following:

"Summary judgment is particularly appropriate in cases involving the interpretation of contracts." *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 564–65 (7th Cir. 1995); *Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 602 (7th Cir.1989). Where the contract is unambiguous, a court must determine the meaning of the contract as a matter of law. *Murphy*, 61 F.3d at 565; *Ryan* [*v. Chromalloy*], 877 F.2d at 602.

*McPeek*, 936 F.Supp. at 626.

Since there are no material factual issues in this case, it is especially well suited for summary judgment.

### B. Analysis

There is no question that the subrogation language in the Plan, if enforced, would require the Fousts to fully reimburse IBP for the medical benefits paid by the Plan as a result of the accident. The Plan's language could hardly be clearer: "If benefits paid under the Medical Plan are recovered by Participant or Covered Family Member from another person or business entity, the Medical Plan will be reimbursed in full.... The Medical Plan will not pay fees or costs associated with a claim/lawsuit without express written authorization."

The Fousts do not dispute that this language, if enforced, would require them to make full reimbursement to the Plan. (Def.'s Resistance to Pl.'s Mot. for Summ.J., at 2.) Instead, they contend that their obligation to reimburse IBP is controlled by Iowa law rather than by the language of the Plan. Iowa Code Section 668.5(3) provides:

[C]ontractual or statutory subrogated persons shall be responsible for a pro rata

share of the legal and administrative expenses incurred in obtaining the judgment or verdict.

Iowa Code § 668.5(3). This language, which is as unambiguous as the Plan's subrogation language, would require IBP to pay its pro rata share of the legal fees incurred by the Fousts to obtain the recovery. IBP contends that the Iowa Code has no bearing on this case because Iowa law has been preempted by federal law. The Fousts argue in the alternative that if IBP's contention is correct, then federal common law should be applied to permit them, under equitable principles, to deduct a pro rata share of their legal expenses before making any payment to the Plan. IBP responds that where, as here, there is specific, controlling Plan language, equitable principles should not be applied.

### 1. Preemption of the Iowa subrogation statute

In *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the United States Supreme Court considered the scope of 29 U.S.C. § 1144(a),[2] the ERISA preemption provision, in relation to a state anti-subrogation statute. FMC operated an ERISA employee welfare benefit plan that provided health benefits to FMC employees and their dependents. *FMC Corp.*, 498 U.S. at 54, 111 S.Ct. at 405. The plan contained a provision requiring members who recovered in a liability action against a third party to reimburse the plan for benefits paid by the plan. *Id.* at 54, 111 S.Ct. at 405–06. This provision conflicted with a Pennsylvania statute precluding subrogation or reimbursement in actions arising out of motor vehicle accidents. *Id.* at 55 nn. 1 & 2, 111 S.Ct. at 406 nn. 1 & 2. Cynthia Holliday, the dependent of an FMC employee, was injured in an automobile accident and the plan paid part of her medical expenses. Relying on the state anti-subrogation statute, she refused to honor FMC's demand for reimbursement. *Id.* at 55, 111 S.Ct. at 406.

2. Section § 1144(a), the ERISA preemption provision, provides as follows:

Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this

chapter shall supersede any and all state law insofar as they may now or hereafter relate to any employee benefit plan.

29 U.S.C. § 1144(a).

■ The issue addressed by the Supreme Court was whether the Pennsylvania anti-subrogation statute "related to" an ERISA employee benefit plan for purposes of 29 U.S.C. § 1144(a). *FMC Corp.*, 498 U.S. at 58, 111 S.Ct. at 407. Under the test announced in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), a state law "relates to" an employee benefit plan if it has "a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. at 2899–2900. Commenting that "[t]he preemption clause is conspicuous for its breadth," the Court in *FMC Corp.* decided that the Pennsylvania anti-subrogation statute had a "reference to" ERISA benefit plans because, by statute, it applied to "[a]ny program, group contract or other arrangement for payment of benefits." *FMC Corp.*, 498 U.S. at 58–59, 111 S.Ct. at 407–08. The Court also decided that, because of the differing effects such laws could have in different states, the anti-subrogation statute had a "connection with" ERISA benefit plans.

> To require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits. Thus, where a patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, we have applied the pre-emption clause to ensure that benefit plans will be governed by only a single set of regulations.

*Id.* at 60, 111 S.Ct. at 408 (citations and quotations omitted).

In the present case, the Iowa statute makes no "reference to" ERISA employee benefit plans, or for that matter, to any plan, program, or arrangement for the payment of employee benefits. Rather, it refers to "contractual or statutory subrogated persons." *See* IOWA CODE § 668.5(3). Even construing ERISA's preemption provision as broadly as possible, this is not enough to support a finding that the statute has a "reference to" an ERISA employee benefit plan. *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656, 115 S.Ct. 1671, 1677, 131 L.Ed.2d

695 (1995) [hereinafter *Blue Cross*]; *cf. District of Columbia v. Greater Wash. Bd. Of Trade*, 506 U.S. 125, 129–30, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992).

■ Therefore, for preemption to apply, the Iowa statute must have a "connection with" ERISA benefit plans. This connection does not have to be a direct one. "[Congress] did not mean to pre-empt only state laws specifically designed to affect employee benefit plans." *FMC Corp.*, 498 U.S. at 58, 111 S.Ct. at 409; *Blue Cross*, 514 U.S. at 667, 115 S.Ct. at 1682; *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). However, it is not clear what type of connection is required to satisfy the test in *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. Justice Souter, writing for the Court, noted in *Blue Cross* that determining with "uncritical literalism" whether a state law has a "connection with" an ERISA plan is often of no more help than trying to construe whether the state law "relates to" an ERISA plan. *Blue Cross*, 514 U.S. at 656, 115 S.Ct. at 1677. He observed that "[w]e simply must go beyond the unhelpful text and frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.*

The present case is not distinguishable from *FMC Corp.* As in *FMC Corp.*, the Iowa statute would "risk subjecting plan administrators to conflicting state regulations." *FMC Corp.*, 498 U.S. at 59, 111 S.Ct. at 408 (citing *Shaw*, 463 U.S. at 95–100, 103 S.Ct. at 2898–2902). In reaffirming its holding in *FMC Corp.*, the Supreme Court in *Blue Cross* noted that, if the Pennsylvania statute had been enforced against ERISA plans, "Pennsylvania employees who recovered in negligence actions against tort-feasors would, by virtue of the state law, in effect have been entitled to benefits in excess of what plan administrators intended to provide, and in excess of what the plan provided to employees in other states." *Blue Cross*, 514 U.S. at 658, 115 S.Ct. at 1678. This is precisely what would happen if section 668.5(3) of the Iowa Code were to be enforced against IBP's Plan. Iowa employees who recovered in negligence

actions against tort-feasors would, by virtue of section 668.5(3), in effect be entitled to benefits in excess of what plan administrators intended to provide, and in excess of what the plan provided to employees in other states.

Moreover, this is the holding of the Eighth Circuit in *Stillmunkes v. Hy–Vee Employee Benefit Plan & Trust*, 127 F.3d 767, 768 (8th Cir.1997), and in *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 139 (8th Cir.1997) [hereinafter *Waller*]. The court is bound by these decisions. *See United of Omaha v. Business Men's Assurance Co. of America*, 104 F.3d 1034, 1042 (8th Cir.1997); *Land v. Chicago Truck Drivers, Helpers & Warehouse Union Health & Welfare Fund*, 25 F.3d 509, 511 (7th Cir.1994) (holding ERISA supercedes any and all state laws relating to covered plans); *Hampton Industries Inc. v. Sparrow*, 981 F.2d 726, 729 (4th Cir.1992) (holding North Carolina subrogation statute preempted); *Provident Life & Accident Insurance Co. v. Linthicum*, 930 F.2d 14, 16 (8th Cir.1991); *Provident Life & Accident Insurance Co. v. Waller*, 906 F.2d 985, 989–90 (4th Cir.) (finding state common law of unjust enrichment preempted), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990); *Baxter v. Lynn*, 886 F.2d 182, 185 (8th Cir.1989); *Trident Reg'l Health Sys. v. Polin*, 948 F.Supp. 509, 514 (D.S.C.1996) (holding South Carolina subrogation law "of no moment" in resolving dispute with ERISA plan).

The Fousts rely heavily on *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 562, 139 L.Ed.2d 403 (1997), in which the Seventh Circuit held that the Illinois common fund doctrine is not preempted by 29 U.S.C. § 1144(a). *Blackburn*, 115 F.3d at 495–96. The court reasoned that the "common-fund doctrine long predated not only ERISA but also employer-sponsored health plans." *Id.* at 495. The court also noted that

> the common-fund doctrine provides compensation for work done to create the fund; it is indifferent (does not "relate") to the basis of any particular claim to the fund.... Subrogation clauses are not self-enforcing, and one way or the other recoveries must be paid for.

*Id.* at 495–96. The Fousts argue that section 668.5(3) of the Iowa Code is derivative of the common law "common fund doctrine." (Def.'s Resistance to Pl.'s Mot. for Sum. J., at 4.)

While the court finds the approach of the Seventh Circuit both equitable and appealing,[3] for a number of reasons it cannot reach the same result in the present case. First, the *Blackburn* decision seems to be directly in conflict with the Supreme Court's ruling in *FMC Corp.* The *Blackburn* court attempts to distinguish *FMC Corp.* by noting that the law in that case had "a much closer 'relation'" than that of common-fund doctrine to ERISA plans." *Blackburn*, 115 F.3d at 496. The *Blackburn* court ignored the "connection with" analysis in *FMC Corp.*, which appears to be squarely in point here. *FMC Corp.*, 498 U.S. at 58–59, 111 S.Ct. at 407–08. Second, the *Blackburn* court noted the fact that the common fund doctrine "long predated"

---

**3.** The court notes that a sense of fairness militates strongly in favor of requiring IBP to participate in the costs of recovering their medical payments. (This would even more evident if the Fousts had recovered less than the total of their medical expenses in the third-party action. *See Bollman Hat Co. v. Root*, 112 F.3d 113, 117 (3d Cir.) *cert. denied*, —— U.S. ——, 118 S.Ct. 373, 139 L.Ed.2d 290 (1997)). Many courts agree, and reach the "equitable" or "appealing" result by various means. (In addition to the approach taken in *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 562, 139 L.Ed.2d 403 (1997), see, e.g., the cases collected *infra* note 5.) According to one court,

> [p]erhaps the most candid assessment appears in *Carpenter v. Modern Drop Forge Co.*, 919 F.Supp. 1198, 1206 (N.D.Ind.1995), where these results are explained and justified by reference to "the inherent and equitable authority of the court to determine what is fair." However, as has been observed elsewhere, federal judges "do not sit as federal chancellors confecting ways to escape" laws which create results which may not seem abstractly "fair". *In re Samuels & Co., Inc.*, 526 F.2d 1238, 1242 (5th Cir.) (en banc) [*cert. denied sub nom. Stowers v. Mahon*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976)].

*Health & Welfare Plan for Employees of REM, Inc. v. Ridler*, 942 F.Supp. 431, 435 (D.Minn. 1996), *aff'd*, 124 F.3d 207 (8th Cir.1997).

ERISA. *Blackburn,* 115 F.3d at 495. ERISA was enacted on September 2, 1974, *before* Iowa Code Chapter 668, which took effect on July 1, 1987. Third, in *Blackburn* the court noted that the employer's plan had no language requiring participants to shoulder the entire burden of attorneys' fees to obtain third-party recoveries,[4] unlike IBP's Plan, which does. Finally, this court is bound by the contrary Eighth Circuit authority in *Stillmunkes,* 127 F.3d at 768, and *Waller,* 120 F.3d at 139.

The court finds that since section 668.5(3) of the Iowa Code is "connected with" ERISA benefit plans, it is superceded by federal law. Thus, section 668.5(3) has been preempted by federal law and has no effect on the court's decision in this case.

### 2. *Federal common law*

The Fousts alternatively argue that even if Iowa law has been preempted, the court should apply federal common law to avoid the full reimbursement language in the Plan's subrogation clause. They ask the court to use equitable principles under federal common law to reduce IBP's recovery by its pro rata share of the attorneys' fees. The equitable principles that have been applied by the courts in this situation are unjust enrichment and the common fund doctrine.

Congress intended that a body of federal common law would develop to supplement and complement the rights and obligations delineated under ERISA. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989). However, federal common law is only appropriate to "fill the gaps left by ERISA's express provisions." *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1351 (8th Cir.1980). In *Ryan by Capria–Ryan v. Federal Express Corp.,* 78 F.3d 123, 126 (3d Cir.1996) [hereinafter *Ryan* ], the court stated:

> It is well established that federal courts have the power under appropriate circumstances to apply common-law doctrines in

ERISA actions. The Supreme Court has instructed federal courts "to develop a 'federal common law of rights and obligations under ERISA-regulated plans' ... guided by principles of trust law." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)). *See also Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1257 n. 8 (3d Cir.1993) (*"Firestone* authorizes the federal courts to develop federal common law to fill gaps left by ERISA.").

*Ryan,* 78 F.3d at 126.

A primary purpose of ERISA is to ensure the integrity and primacy of the written plans. *Duggan v. Hobbs,* 99 F.3d 307, 309–310 (9th Cir.1996); *Van Orman v. American Ins. Co.,* 680 F.2d 301, 312 (3d Cir.1982). Courts may not apply common law principles to alter the express terms of written benefit plans. *Bollman Hat Co. v. Root,* 112 F.3d 113, 116 (3d Cir.) *cert. denied,* —— U.S. ——, 118 S.Ct. 373, —— L.Ed.2d —— (1997); *Cinelli v. Security Pacific Corp.,* 61 F.3d 1437, 1444–1445 (9th Cir.1995); *Van Orman,* 680 F.2d at 312; *Land,* 25 F.3d at 511. The Eighth Circuit Court of Appeals in *Waller,* 120 F.2d at 141, said: "A subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan." *Id.* (citing *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981); *John Morrell & Co. v. United Food & Commercial Workers Int'l Union,* 37 F.3d 1302, 1303–1304 (8th Cir. 1994), *cert. denied,* 515 U.S. 1105, 115 S.Ct. 2251, 132 L.Ed.2d 259 (1995)). *Cf. Hawkeye Nat'l Life Ins. Co. v. AVIS Indus. Corp.,* 122 F.3d 490, 500 (8th Cir.1997).

In *Ryan,* the Third Circuit was faced with a fact pattern nearly identical to the present case. Plaintiffs were beneficiaries of a ERISA employee welfare plan which required full reimbursement of all benefits paid by the plan if the amount recovered from a

---

**4.** "But [the employer's] plan does not have such a requirement, Illinois has not attempted to override it, and there will be time to cross that bridge when we come to it." *Blackburn,* 115 F.3d at 496.

third party exceeded the amount of the benefits paid by the plan. *Ryan*, 78 F.3d at 124. The court rejected the application of federal common law and held that the language of an ERISA regulated plan controlled. The court said that "it would be inequitable to permit the Ryans to partake of the benefits of the Plan and then after they had received a substantial settlement, invoke common law principles to establish a legal justification for their refusal to satisfy their end of the bargain." *Id.* at 127–28.

In *dicta*[5] in *Waller*, 120 F.2d at 141, the Eighth Circuit expressly approved the holding in *Ryan*. After summarizing the ruling in *Ryan*, the *Waller* court "agree[d] with the decision in *Ryan* because it properly bases the federal common law under ERISA on the terms of the particular plan at issue." *Waller*, 120 F.2d at 141. In *Bollman*, 112 F.3d at 118, the Third Circuit, asked to overrule *Ryan*, refused, stating:

> ERISA is silent on the issue of subrogation. We may adopt a common law principle only if necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress. Otherwise, we may not create substantive ERISA rights.

*Bollman*, 112 F.3d at 118 (citations and quotations omitted). The court emphasized that the policies underlying ERISA generally counsel reliance on unambiguous plan language. *Id.*

The federal courts are divided over the creation of a federal common law of unjust enrichment in ERISA cases. Compare *Cummings v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 390 (7th Cir.) (courts should only invoke federal common law of unjust enrichment in "limited circumstances"), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986) and *Van Orman*, 680 F.2d at 312 (no federal common law cause of action under doctrine of unjust enrichment when "such a right would override a contractual provision"), and *Amato v. Western Union Int'l*, 773 F.2d 1402 (2d Cir. 1985) (no ERISA common law of unjust enrichment in "circumstances of this case"), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986), with *Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund*, 618 F.Supp. 943, 950 (D.Del.1985) (included within grant of authority to create federal common law "is the power, in appropriate circumstances, to order restitution to prevent unjust enrichment"), and *Morales v. Pan American Life Ins. Co.*, 718 F.Supp. 1297, 1301 (E.D.La.1989) ("Creation of a federal common law of unjust enrichment ... would be inconsistent with ERISA's terms and policies."), *aff'd*, 914 F.2d 83 (5th Cir.1990).[6]

█ In any event, it is clear that unjust enrichment should seldom be used where it would negate an express provision of an ERISA plan. As the court said in *Ryan*, "enrichment is not 'unjust' where it is allowed by the express terms of the ... plan." *Ryan*, 78 F.3d at 127 (citations omitted). In *Cummings*, 797 F.2d at 390, the court stated: "We are particularly reluctant to fashion a federal common law doctrine of unjust enrichment when such a right would override a contractual provision in a pension plan. The existence of such a contract, negotiated between the parties, requires a particularly strong indication that the unjust enrichment

---

5. The court distinguished *Ryan by Capria–Ryan v. Federal Express Corp.*, 78 F.3d 123 (3d Cir. 1996), because the plan in *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 139 (8th Cir.1997) [hereinafter *Waller*], had no provision concerning attorneys' fees. *Waller*, 120 F.3d at 141. Several courts have applied federal common law where plan language is silent or ambiguous on the question of whether attorneys' fees should be deducted from a subrogation claim. *See, e.g., McIntosh v. Pacific Holding Co.*, 120 F.3d 911, 912 (8th Cir.1997) (silent); *Waller*, 120 F.3d at 141 (silent); *Wal–Mart Stores, Inc. Associates' Health & Welfare Plan v. Bond*, No. Civ.A. 96–7522, 1997 WL 330388, at *2 (E.D.Pa. June 5,

1997) (ambiguous); *Carpenter v. Modern Drop Forge Co.*, 919 F.Supp. 1198, 1206 (N.D.Ind. 1995) (silent); *Serembus v. Mathwig*, 817 F.Supp. 1414, 1423 (E.D.Wis.1992) (silent). *But see Health & Welfare Plan for Employees of REM*, 942 F.Supp. at 434–35. The Plan language in the present case unambiguously provides for full reimbursement.

6. The foregoing summary was taken from *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 987 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990).

doctrine will vindicate an important statutory policy." *Id.*[7]

■ Some courts have considered applying the common fund doctrine under federal common law to deduct attorneys' fees from subrogation recoveries due to an ERISA plan.[8] *See, e.g., McIntosh v. Pacific Holding Co.,* 928 F.Supp. 1464 (D.Neb.1996), *rev'd,* 120 F.3d 911 (8th Cir.1997). The Eighth Circuit Court of Appeals, however, has recently held that the common fund doctrine cannot be used in such a situation. In *Stillmunkes,* 127 F.3d at 768, the court ruled, without discussion, that the common fund doctrine cannot be used to reduce an ERISA plan's subrogation claim by its share of the attorneys' fees.[9] *Accord Health Care Controls, Inc. v. Isbell,* No. 96–5814, 1997 WL 705073, at *2 (6th Cir. Nov.6, 1997) ("[The defendant] has not identified to this Court that application of a set-off under a equitable common fund doctrine would advance any explicit statutory purpose of ERISA. Rather, we find that it would undermine the express terms of the Plan that require full reimbursement for medical benefits.").

■ The Plan contains specific contract language that states that the "Plan will not pay fees or costs associated with a claim/lawsuit...." For the court to override this contractual language and apply either the doctrine of unjust enrichment or the common fund doctrine, the court would have to find that the doctrine would vindicate an important statutory policy under ERISA. The court is not aware of any policy implicated by ERISA that would be advanced by such a ruling. Furthermore, the court has found no

cases where unjust enrichment or the common fund doctrine have been applied to defeat full reimbursement language in a subrogation clause in an ERISA plan.[10] *See, e.g., Ryan,* 78 F.3d at 127; *Bollman,* 112 F.3d at 118; *Stillmunkes,* 127 F.3d at 768; *Green v. Hotel Employees & Restaurant Employees Int'l Welfare–Pension Funds,* No. 95–16314, 1997 WL 8466, at *3 (9th Cir. Jan.7, 1997); *Thompson. v. Federal Express Corp.,* 809 F.Supp. 950, 958 (M.D.Ga.1992).

The court would not hesitate in this case to use either the doctrine of unjust enrichment or the federal common fund doctrine to require IBP to bear its fair share of the Fousts' attorneys' fees. It seems the only just result. However, the court is faced with binding contrary authority in the Eighth Circuit, *see Waller,* 120 F.3d at 140; *Stillmunkes,* 127 F.3d at 768, and a body of law that does not permit such a result.

For the foregoing reasons, federal common law cannot be used in this case to negate the full reimbursement language in the Plan.

### IV. CONCLUSION

Based upon the foregoing analysis, the court finds that plaintiff's motion for summary judgment should be **granted** and the defendants' motion to dismiss should be **denied.**

### IT IS SO ORDERED.

7. There is no evidence in the record of the present case concerning whether or how the terms of the Plan were negotiated, but the court is not particularly impressed with this argument. It is likely that the Fousts had little if any input into the language of the Plan's subrogation clause.

8. This is different from the approach taken by the court in *Blackburn,* 115 F.3d. at 495, where the court applied the Illinois common fund doctrine. The federal common fund doctrine allows a court to assess attorneys' fees against an entire fund where a litigant or lawyer recovers a common fund for the benefit of persons other than himself or his client. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980).

9. "The Stillmunkeses argue that the common fund doctrine in federal common law required the reduction of Hy–Vee's claim by Hy–Vee's proportionate stare of the attorneys' fees and expenses incurred in the lawsuit against the state of Iowa. We conclude that the bankruptcy court did not err in denying these arguments." *Stillmunkes,* 127 F.3d at 768.

10. The court in *Dugan v. Nickla,* 763 F.Supp. 981, 984 (N.D.Ill.1991), without any real discussion, deducted attorneys' fees from a subrogation award despite full reimbursement language, but it appears that the plan did not object to the payment.